IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT COLLIER,                          §
                                         §
                    Plaintiff,           §
                                         §
VS.                                      §        Civil Action No. 3:17-CV-3362-D
                                         §
DALLAS COUNTY HOSPITAL                   §
DISTRICT, d/b/a PARKLAND                 §
HEALTH & HOSPITAL SYSTEM,                §
                                         §
                    Defendant.           §

MEMORANDUM OPINION
AND ORDER

        In this employment discrimination action in which plaintiff alleges claims for race

discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Texas Commission on

Human Rights Act ("TCHRA"),[1] Tex. Lab. Code Ann. § 21.001, *et seq.* (West 2015),

defendant Dallas County Hospital District d/b/a Parkland Health & Hospital System

("Parkland") moves for summary judgment. For the reasons that follow, the court grants

Parkland's motion and dismisses this action by judgment filed today.

_____

        [1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541
(N.D. Tex. July 11, 2007 ) (Fitzwater, J.): "Chapter 21 was entitled the Texas Commission
on Human Rights Act until the abolishment of the Commission on Human Rights. In 2004,
the 'powers and duties' of the Commission on Human Rights were transferred to the Texas
Workforce Commission Civil Rights Division." *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal
Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet.) (not designated for
publication)). As in *King*, the court for clarity will refer to these claims as brought under the
TCHRA.

I

Plaintiff Robert Collier ("Collier"), who is African American, was employed at
Parkland Memorial Hospital[2] as an Operating Room Aide ("ORA") from January 5, 2009
through July 12, 2016.[3]  As an ORA, Collier was subject to Parkland's Time and Attendance
Corrective Action Guidelines ("Attendance Guidelines"), which address employee violations
of its Standards of Attendance Policy ("Attendance Policy").   Under the Attendance
Guidelines, an employee incurs a preset number of points for each unscheduled absence,
unapproved absence, incomplete shift, or tardiness.   The Attendance Guidelines also
prescribe the type of corrective action to be taken—verbal warning, written warning, final
warning, and termination—based on the amount of points the employee has incurred during
the previous rolling 12-month period.  During his employment, Collier was also subject to
Parkland's Corrective Action Policy, which governs the discipline of employees for
substantive work violations unrelated to absences, such as violations of Parkland policies and
procedures and/or poor work performance.  Like the Attendance Guidelines, the Corrective
Action Policy provides recommended guidelines for progressive discipline—verbal warning,

_____

[2]Parkland Memorial Hospital is owned and operated by defendant Parkland.  Because
a distinction between Parkland and Parkland Memorial Hospital is unnecessary for purposes
of this opinion, the court will refer to both as "Parkland."

[3]In deciding defendant's motion for summary judgment, the court views the evidence
in the light most favorable to plaintiff as the summary judgment nonmovant and draws all
reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541
F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v.
Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

written warning, final warning, and termination—based on the violation at issue.

During 2013 and 2014, Collier applied for six different department promotions through Parkland's job posting and for two different positions outside of the department.[4] Although three of the positions for which Collier applied were ultimately canceled, Collier's applications for the remaining five positions were all denied, allegedly on the basis that Collier was ineligible for a promotion or reassignment under Parkland's Reclassification Procedure[5] because he had received a written or final warning during the 12 months preceding each of his applications.[6]

Collier contends that, during roughly this same time period, he complained about

_____

[4]Collier applied for the following positions: ORA III, on August 29, 2013; ORA II, on September 10, 2013; Radiology Unit Aide, on October 7, 2013; ORA II, on December 3, 2013; Asset Management Technician I, on January 10, 2014; ORA III, on January 21, 2014; ORA II on July 3, 2014; and ORA III, on October 30, 2014.

[5]Under Parkland's Reclassification Procedure

> [t]o be eligible for reassignment to another position within Parkland, all Parkland employees, regardless of status . . . [c]annot have received a written or final warning in the previous twelve months, (this includes Attendance and Performance and Behavior Corrective Actions)[.]

D. App. 346.

[6]It is undisputed that, during his employment at Parkland, Collier received 26 Corrective Action Reports for absences and tardies in violation of Parkland's Attendance Policy, including the following: a written warning, on January 25, 2013; a written warning, on February 7, 2013; a final warning, on May 22, 2013; a verbal warning, on September 9, 2014; a written warning, on October 2, 2014; a written warning, on November 7, 2014; a written warning, on January 27, 2015; and a written warning, on March 6, 2015. In addition, as discussed below, Collier received a written warning for performance issues on August 25, 2014.

Parkland's discriminatory practices "multiple times." P. Br. 5. For example, on July 26, 2013 Collier submitted a complaint to Parkland's 1-800 hotline because he believed he was not being treated the same as his Caucasian coworkers, he was "having issues" with Operating Room Director Richard Stetzel ("Stetzel"), and he believed that Stetzel was treating African American employees differently from Hispanic and Caucasian employees. *Id.*

On August 25, 2014 Collier received a written warning after he allegedly failed to follow the procedure for radio usage and failed to notify his supervisor when leaving the department. The Corrective Action Report states, *inter alia*:

> [o]n this day he was observed by management to be socializing on another floor and not available to perform his duties. Mr. Collier was called multiple times on the walkie-talkie and on the [Operating Room ("OR")] overhead paging system to come to the OR office. He did not respond via radio, nor did he come to the office when requested.

D. App. 132.

On July 9, 2015 Collier filed an internal complaint alleging that African American employees were not given the same opportunities to earn higher pay or be promoted. Collier complained that he and two other African American employees, Otha Davis ("Davis") and Curtis Amison ("Amison"), had applied for promotions but were not selected, and that less experienced non-African American employees had been promoted instead.[7]

---

[7]Employee Relations Advisor CaSaundra Henderson investigated Collier's complaint and found that, contrary to Collier's report, Amison and Davis had been promoted from an ORA II to ORA III in February 2015. She also found that Collier had not been promoted for

On August 24, 2015 Collier received a final warning for allegedly failing to follow the procedure for radio usage by not responding to multiple calls on the radio from his supervisor[8] and for exhibiting inappropriate behavior by punching an OR wall "numerous times in frustration."[9] D. App. 138. Collier was advised that "[c]ontinued noncompliance regarding adherence of [Parkland] and/or departmental policies may result in additional corrective action, not to exclude termination." *Id.*

On November 3, 2015 Collier called Parkland's employee hotline to reiterate that he had been "having issues" with Stetzel, and to report that he was "now on the final warning and he believe[d] that [Stetzel] [was] trying to create an issue to cost [Collier]'s job." P. Br. 5. Collier contends that, on May 2, 2016, he "called the hotline yet again because of Defendant's discriminatory conduct. He complained about [ORA Supervisor Jose Reyes ("Reyes")], and that the department was unprofessional." *Id.*

On June 30, 2016 an altercation between Collier and Reyes resulted in Collier's being removed from the Parkland premises and ultimately terminated. According to Collier, he and Reyes had a disagreement, and Reyes pushed a bed into Collier. When Collier complained about Reyes's conduct and about where he was assigned to work, Reyes told Collier to

_____

a job posting he applied for in July 2014 because he was ineligible to be considered under Parkland's Reclassification Procedure due to a written counseling for attendance.

[8]Collier denies that his supervisor, Jose Reyes, called him on his radio on August 24, 2015.

[9]An incident report dated August 5, 2015 states that Collier admitted that he had hit the wall in frustration.

present his complaint to Stetzel or go home. Collier then punched a wall in anger. He contends that while he was looking for Stetzel, the police were called "[b]ecause [Collier] was making different kind of comments about how frustrated he was with management." P. App. 66.

Parkland offers a different version of the events of June 30, 2016. According to Parkland, Reyes had assigned Collier to work in OR Pod D, but Collier refused to do so. After a brief verbal altercation, Collier and Reyes went to OR Unit Manager Nuray Kuloglu's ("Kuloglu's") office. Kuloglu reported that Collier was visibly upset during the meeting and told her that he was not going to work in Pod D because he wanted to work in Pod B instead. Kuloglu told Collier that he needed to work in his assigned area. Later that same morning, Reyes observed Collier talking to another ORA in Pod A. Reyes told Collier that he needed to return to Pod D and help the staff turn over an operating room. According to Parkland, Collier yelled at Reyes; stated that Reyes was not his "f—ing daddy"; yelled "[y]ou're gonna get it. You've got something coming"; and began to walk aggressively toward Reyes with his fists closed. D. Br. 7. Parkland maintains that Director of PeriOperative Surgery Radiology Nursing Margie Caramucci overheard Collier and Reyes and brought them into her office where she explained that Collier needed to follow Reyes's assignment. After the verbal altercation with Collier, Reyes returned to Kuloglu's office and reported the incident. Together, they called the Parkland Police Department, which issued Collier a citation for assault and escorted him off of the property, instructing him not to return until further instructed.

After Collier was escorted off the Parkland premises, Employee Relations Advisor CaSaundra Henderson ("Henderson") and Employee Relations Director Arthur Ferrell ("Ferrell") were informed about the altercation between Reyes and Collier. They investigated the incident, reviewed all of the statements they received, and met with Stetzel and Interim Vice President Brandon Bennett ("Bennett") to determine the appropriate course of action. They determined that Collier had failed to follow his supervisor's directive to work in Pod D and had failed to follow the instruction of two additional leaders, thereby impacting patient care. Because Collier had previously been counseled and received a written warning and final warning, Ferrell and Henderson concluded that Collier's insubordination warranted termination, consistent with Parkland's Corrective Action Policy, and recommended that Collier be terminated. Bennett and Stetzel approved the recommendation, and Collier's employment with Parkland was terminated on July 12, 2016.

On January 20, 2016 Collier filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination alleging race and color discrimination and retaliation. After exhausting his administrative remedies and receiving a right to sue letter, Collier brought the instant lawsuit against Parkland, alleging claims for race discrimination, hostile work environment, and retaliation, in violation of Title VII and the TCHRA.[10] Parkland now moves for summary judgment, and Collier opposes the motion.

---

[10]In his complaint, Collier originally named Parkland and Dallas County as defendants and brought claims under Title VII, the TCHRA, and 42 U.S.C. § 1981. In his amended complaint, however, Collier abandoned his § 1981 claim and has omitted Dallas County as a defendant.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

For claims or defenses on which the moving party will bear the burden of proof at trial, to be entitled to summary judgment the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) ( Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist*., 353 F. 3d 409,

412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Collier alleges that Parkland discriminated against him on the basis of race, in violation of Title VII and the TCHRA. Under Title VII,[11] it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U .S.C. § 2000e-2. Because Collier relies on circumstantial evidence to support his discrimination claims, they are properly analyzed under the familiar *McDonnell Douglas*[12] burden-shifting framework. *Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam).

As modified, the *McDonnell Douglas* framework consists of three stages. First, Collier must establish a prima facie case of discrimination, which "creates a presumption that [Parkland] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination under the

---

[11]"[T]he law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citation omitted).

[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*McDonnell Douglas* framework, Collier must show that

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably . . . than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam)).

Second, if Collier establishes a prima facie case, the burden shifts to Parkland to articulate a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Parkland's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Third, if Parkland meets its production burden, Collier may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (Title VII race discrimination case). Under the pretext alternative, Collier must "offer sufficient evidence to create a genuine issue of material fact . . . that [Parkland's] reason is not true, but is instead a pretext for discrimination [.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted). Under the mixed-motives alternative, he must offer sufficient evidence to create a genuine issue of material fact "that [Parkland's]

reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Collier's] protected characteristic[.]" *Id.* (citation and internal quotation marks omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

IV

The court begins with Collier's claim that Parkland discriminated against him, in violation of Title VII and the TCHRA, when it failed to promote him to the various positions for which he applied between August 29, 2013 and October 30, 2014.

A

Parkland moves for summary judgment, contending, *inter alia*, that Collier failed to timely exhaust his administrative remedies as to this claim. "It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted his administrative remedies by filing a charge of discrimination with the EEOC." *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *3 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Bernard v. ATC VanCom*, 2005 WL 139110, at *2 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J.)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010). In states such as Texas, which provide a state administrative mechanism to address claims of employment discrimination, a Title VII

plaintiff must file a charge of discrimination with the EEOC within 300 days after learning

of the conduct alleged. *See* 42 U.S.C. § 2000e-5(e)(1); *Griffin v. City of Dallas*, 26 F.3d 610,

612 (5th Cir. 1994). A complaint under the TCHRA "must be filed not later than the 180th

day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann.

§ 21.202(a).[13]

It is undisputed that Collier filed his Charge of Discrimination on January 20, 2016.

Accordingly, to the extent Collier's failure to promote claim under Title VII is based on

discrete acts that occurred prior to March 26, 2015, and to the extent his failure to promote

claim under the TCHRA is based on discrete acts that occurred prior to July 24, 2015, Collier

did not properly exhaust his administrative remedies.

Parkland has adduced undisputed evidence that the only positions for which Collier

applied during his employment are the following: ORA III position, on August 29, 2013;

ORA II position, on September 10, 2013; Radiology Unit Aide position, on October 7, 2013;

ORA II position, on December 3, 2013; Asset Management Technician I position, on January

---

[13]The Supreme Court recently held, in *Fort Bend County, Texas v. Davis*, ___ U.S. ___, 2019 WL 2331306 (U.S. June 3, 2019), that the exhaustion requirement of Title VII is a mandatory procedural rule, "not a jurisdictional prescription delineating the adjudicatory authority of courts," resolving a conflict among the courts of appeals over whether Title VII's charge-filing requirement is jurisdictional. *Id.* at *4, 6. It is unclear whether, under Texas law, exhaustion of administrative remedies is still treated as "jurisdictional." *See Black v. Dallas Cty. Cmty. Coll. Dist.*, 2017 WL 395695, at *4 n.7 (N.D. Tex. Jan. 30, 2017) (Fitzwater, J.) (comparing cases). Because treating the exhaustion requirement as an affirmative defense places a greater burden on Parkland and does not alter the outcome, the court will assume, for purposes of this memorandum opinion, that exhaustion under the TCHRA, like exhaustion under Title VII, is an affirmative defense that Parkland must establish prove beyond peradventure to be entitled to summary judgment.

10, 2014; ORA III position, on January 21, 2014; ORA II position, on July 3, 2014; and ORA III position, on October 30, 2014. Parkland moves for summary judgment on the ground that Collier had concluded that he had been passed over for promotions prior to March 26, 2015, and that because his failure-to-promote claims are based on discrete events that occurred outside the 300-day statutory window (for Title VII) and 180-day statutory window (for the TCHRA), Collier's failure-to-promote claims must be dismissed as time-barred.

In his response, Collier neither contends nor produces evidence that he was denied a promotion within 180 or 300 days of his filing his Charge of Discrimination. Instead, Collier posits that

> [a]s all of the discrimination that Plaintiff suffered from was "cumulative" and part of a pattern and practice of discrimination, all of Plaintiff's claims are timely. Plaintiff has alleged several acts of discrimination as part of Defendant's pattern and practice within the statutory window. Plaintiff was subjected to racial graffiti within the statutory window, and he was terminated within the statutory window. Therefore, all of Plaintiff's claims are timely.

P. Br. 10. The court disagrees.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that "[a] discrete retaliatory or discriminatory act 'occurred[,]'" for purposes of Title VII's exhaustion requirement, "on the day that it 'happened,'" and that "[a] party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110; *see also id.* at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts

- 13 -

alleged in timely filed charges."). Discrete discriminatory acts include "termination, *failure to promote*, denial of transfer, or refusal to hire." *Id.* at 114 (emphasis added). Although Collier is correct that his "charge alleging a *hostile work environment* claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," *id.* at 122 (emphasis added), he has provided the court no basis to conclude that this "continuing violation" theory also applies under the facts of this case to his failure-to-promote claims. Accordingly, because Parkland has established beyond peradventure that Collier failed to timely exhaust his administrative remedies with respect to his Title VII and TCHRA failure-to-promote claims, the court concludes that Parkland is entitled to summary judgment dismissing these claims.

B

Alternatively, the court holds that Parkland is entitled to summary judgment on Collier's failure-to-promote claims because Collier has failed to meet his prima facie burden.

To make a prima facie showing that he was denied a promotion based on his race, Collier must demonstrate that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) Parkland either gave the promotion to someone outside of that protected class or otherwise failed to promote Collier because of his race. *See, e.g., Clemmer v. Irving Indep. Sch. Dist.*, 2016 WL 1161784, at *11 (N.D. Tex. Mar. 22, 2016) (Fitzwater, J.) (citing *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013), *aff'd sub nom. Chen v. Irving*

*Indep. Sch. Dist.*, 689 Fed. Appx. 379 (5th Cir. 2017). It is undisputed that Collier is a member of a protected class and that he was rejected for the positions to which he applied. Parkland moves for summary judgment on the ground that Collier has failed to demonstrate both that he was qualified for the positions he sought and that the positions were given to someone outside of Collier's protected class.

Collier applied for eight different promotions or jobs at Parkland between August 2013 and October 2014. Parkland has adduced undisputed evidence that three of the eight positions for which Collier applied were canceled, and that, therefore, no one was hired. For the remaining five positions for which Collier applied, it is undisputed that four were filled by a member of Collier's protected class, and Collier has failed to adduce any evidence that the fifth was filled by someone outside of his protected class. Because Collier has failed to argue or adduce any evidence that Parkland promoted someone outside of Collier's protected class or that Parkland otherwise failed to promote Collier because of his race, the court concludes that Collier has failed to make the requisite showing with respect to the fourth element of his prima facie case. Accordingly, Parkland is entitled to summary judgment on Collier's Title VII and TCHRA failure-to-promote claims.

V

The court next considers Parkland's motion for summary judgment on Collier's race discrimination claim to the extent this claim is based on allegations that Collier was denied overtime, unfairly disciplined, and terminated.

Parkland moves for summary judgment on Collier's denial-of-overtime claim on the following grounds: Collier cannot produce any evidence that he was, in fact, denied overtime; it is undisputed that he worked over 179 hours of overtime during his employment with Parkland; and Collier cannot produce any evidence that similarly situated non-African American ORAs were given more opportunities to work overtime. Collier responds with evidence that he complained to Human Resources that he had been passed over for raises on the basis of race. He also contends that "[t]here is ample evidence that Supervisor Reyes was discriminatory, and yet the discretion to allow overtime was his only," P. Br. 18, and that Collier "was denied compensatory opportunities by a discriminatory Supervisor who (as evidenced in his hiring policies) heavily favored White and Hispanic workers and discriminated against Black workers," *id.* at 19.

"'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)). Parkland has adduced undisputed evidence that Collier worked 179.25 hours of overtime during his tenure at Parkland, and Collier has failed to make any showing, other than by his subjective beliefs and unsubstantiated allegations, that similarly-situated employees outside of Collier's protected class were treated more favorably. *See, e.g., Davis v. Metwest, Inc.*, 1999 WL 102814, at *3 (N.D. Tex. Feb. 24, 1999) (Fitzwater, J.) (holding that conclusory assertion that employer

"treated her worse than any white male employees and used language that was derogatory in nature . . . [was] insufficient to demonstrate that Metwest treated similarly situated employees more favorably than it treated Davis."). Accordingly, to the extent Collier bases his race discrimination claim on the allegation that he was denied overtime, the court concludes that Collier has failed to make out a prima facie case. Parkland is therefore entitled to summary judgment on this claim.

B

Parkland next moves for summary judgment on Collier's discrimination claim based on his August 25, 2014 written warning and August 24, 2015 final warning, contending, *inter alia*, that these warnings do not constitute adverse employment actions. "[A] plaintiff must show that he was subject to an ultimate employment decision to establish a prima facie case of discrimination." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *4 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) (on rehearing). The Fifth Circuit "has a strict interpretation of the adverse employment element of [the] prima facie intentional discrimination case" under Title VII. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *see also Dixon v. Moore Wallace, Inc.*, 2006 WL 1949501, at *8 (N.D. Tex. July 13, 2006) (Fitzwater, J.), *aff'd*, 236 Fed. Appx. 936 (5th Cir. 2007). For purposes of a discrimination claim brought under these statutes, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (per curiam) (alteration in original; internal

quotation marks and citation omitted). "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action for purposes of a discrimination claim under Title VII." *Dixon*, 2006 WL 1949501, at *8 (quoting *Pegram*, 361 F.3d at 282) (internal quotation marks omitted); *see also Arrieta*, 2008 WL 5220569, at *5 (holding that "disciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions").

Collier does not respond to Parkland's argument that the August 25, 2014 written warning and August 24, 2015 final warning do not constitute ultimate employment decisions. Nor does he present any evidence that these two disciplinary actions affected his job duties, compensation, or benefits.[14]  Accordingly, the court grants Parkland's motion for summary judgment as to Collier's race discrimination claim based on the August 25, 2014 written

---

[14]In his response, Collier cites evidence that he believed African American employees were unfairly disciplined; that, on one occasion, he was called into Stetzel's office after having to leave early, but when his Hispanic coworker, Carlos Sanchez, did the same thing, he was not disciplined; and that

> he was the only employee that got written up because of a radio violation. "Nobody else in the entire—of the aides received any type of write-up or anything because of a radio violation. It was only myself." Indeed, Defendant wrote Plaintiff up for not answering on his radio when it was later proven that his radio was not even working[.]

P. Br. 20 (footnote omitted). But Collier neither argues nor establishes that any of these instances of alleged unfair discipline constitutes an actionable ultimate employment decision.

warning[15] and August 24, 2015 final warning.

C

Parkland moves for summary judgment on Collier's race discrimination claim based on his termination, contending that Collier cannot establish a prima facie case of race discrimination because he was not replaced by an individual outside of his protected class. Parkland maintains that Collier was replaced by another African American male after his termination—and, moreover, that he has failed to show that Parkland gave preferential treatment to another employee under nearly identical circumstances, i.e., that another ORA outside of Collier's protected class was similarly insubordinate to his superior and other leaders after having received a final warning and was not terminated.

Collier does not directly respond to Parkland's arguments; he addresses his termination only in the context of his retaliation claim. Although Collier's failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to h[is] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

---

[15]The court assumes *arguendo* that Collier's discrimination claim based on the August 25, 2014 written warning is not time-barred.

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

Collier has not designated specific facts sufficient to create a prima facie case of race discrimination based on his termination. The court therefore grants Parkland's motion and dismisses Collier's race discrimination claim to the extent it is based on Collier's termination.

## VI

The court next considers Collier's claim for retaliation.

### A

Because Collier relies on circumstantial evidence to support his retaliation claim, he must proceed under the familiar *McDonnell Douglas* burden shifting framework. Collier must first demonstrate a prima facie case of retaliation by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that the trier of fact must find. *See Montemayor v. City of San Antonio*, 276

F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing the prima facie case burden as "minimal").

If Collier establishes a prima facie case, the burden shifts to Parkland to articulate a legitimate, non-retaliatory reason for the action taken. *See Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff*'d, 325 Fed. Appx. 297 (5th Cir. 2009).

If Parkland meets its production burden, the burden shifts back to Collier to produce evidence that retaliation for his protected conduct, rather than Parkland's proffered legitimate non-retaliatory reason, was the "but-for cause" of the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g., Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 570 U.S. at 352)). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

B

The court assumes *arguendo* that Collier has made a prima facie showing of retaliation based on Parkland's issuance of a final warning on August 24, 2015[16] and termination of his employment on July 12, 2016. The burden of production therefore shifts to Parkland to produce evidence of a legitimate, non-retaliatory reason for issuing the August 24, 2015 final warning and terminating Collier's employment. Parkland has satisfied this obligation by producing evidence that Collier was issued a final warning because he had already received a written warning, he failed to follow Parkland's procedure for radio usage and did not respond to multiple calls on the radio from his supervisor, and he punched an OR wall in frustration, and by producing evidence that, consistent with Parkland's Corrective Action Procedure, Collier was terminated because it was determined that he was insubordinate—i.e., he failed to follow his supervisor's directive and assignment to work in Pod D despite being asked by two additional leaders to perform this assignment—and he had already received written and final warnings. The burden now shifts to Collier to raise a fact issue on whether retaliation was the but-for cause of the August 24, 2015 final warning and his termination. *See id.*

_____

[16]The court assumes *arguendo* that the final warning and termination together constitute an adverse employment action for purposes of Collier's prima facie case of retaliation.

## C

Collier contends that Parkland's adverse employment actions against him were taken in retaliation for his protected actions, not as legitimate discipline for rule violations. He posits that there are factual discrepancies regarding the August 24, 2015 final warning; that he found it "suspicious" that he received his final warning 364 days after his written warning, which was just one day shy of when the prior written warning would have "fall[en] off" his record, P. Br. 21; that he refused to agree to the final warning and has testified that his radio never rang, which is why he did not answer it; that he had previously complained about Reyes multiple times for discriminating against African American workers; that the entire incident regarding his dismissal is "overridden with factual discrepancies," *id.* at 22; that he refutes that he was told to go to Pod D; that Reyes told him to go home or go complain to Stetzel; that he disputes the factual testimony of each of Parkland's deponents and affiants; that everyone involved in his termination was White or Hispanic; that Parkland had never called the police to conduct counseling of any White or Hispanic employees; that he was terminated because he complained over and over again about Parkland's discrimination; and that Reyes admitted that Parkland called the police only because Collier "was making different kind of comments about how frustrated he was with management," *id.* at 23.

Parkland argues in reply that, although Collier finds the timing of his written warning to be suspicious, he does not dispute that he engaged in inappropriate behavior when he punched a wall on August 6, 2015, that the discipline for this behavior was warranted, or that a final warning was appropriate and consistent with Parkland's Corrective Action Procedure.

Regarding Collier's termination, Parkland contends that Collier's disagreement with Parkland's reason for terminating him, even if based on Collier's professed innocence of any wrongdoing, is insufficient to enable a reasonable jury to find that his termination was pretextual, especially considering Collier's history of prior corrective action and the numerous witness accounts regarding Collier's insubordinate behavior on June 30, 2016.

D

Collier has not met his burden of introducing evidence that would enable a reasonable jury to find "but for" causation at the third step of the *McDonnell Douglas* paradigm. In his response, Collier contends that the August 24, 2015 final warning was retaliatory because the timing was suspicious and because he had "previously complained about Supervisor Reyes multiple times for discriminating against Black workers," P. Br. 22. Collier does not dispute, however, that he punched an OR wall "numerous times in frustration," on August 6, 2015, D. App. 138, or that this behavior justified the issuance of the final warning. He therefore cannot establish "but for" causation with respect to the August 24, 2015 final warning.

Regarding his termination, Collier contends that the entire incident is "overridden with factual discrepancies" and disputes the factual testimony of each of Parkland's deponents and affiants. P. Br. 22. "It is well-settled, however, that a plaintiff's self-serving denial of allegations of misconduct fails to create an issue of fact as to pretext." *Plumlee v. City of Kennedale*, 795 F.Supp.2d 556, 565 (N.D. Tex. 2011) (McBryde, J.) (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)). In considering the results of

an investigation into employee misconduct, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Merely disputing or denying the underlying facts of an investigation, as Collier has done, fails to create a fact issue as to the falsity of the defendant's explanation. *See Jackson*, 602 F.3d at 379; *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). This is because anti-retaliation laws "do not require an employer to make proper decisions, only non-retaliatory ones." *LeMaire*, 480 F.3d at 391. Collier neither argues nor adduces any evidence that would enable a reasonable jury to find that the individuals responsible for the decision to terminate his employment—Ferrell, Henderson, Bennett, and Stetzel—were motivated by a retaliatory purpose as opposed to actually believing that Collier had been insubordinate on June 30, 2016 and that termination was appropriate under Parkland's Corrective Action Procedure.

In sum, Collier has failed to create a genuine fact issue on the ultimate question of "but-for" causation. He has failed to introduce evidence that would enable a reasonable jury to find that the proffered reason for his termination—insubordination after having already received a final warning—was not the real reason Parkland terminated him. And Collier neither contends nor has introduced evidence that he would not have been terminated "but for" his having "complained over and over again about the Defendant's discrimination." P. Br. 23. In other words, based on the evidence in the summary judgment record, no reasonable jury could find that Collier's complaints to Reyes or to any other individuals at

Parkland were the but-for cause of his termination.

VII

Finally, the court considers Collier's hostile work environment claim.

A

Generally, to establish a prima facie case of a hostile work environment, a plaintiff

must show the following:

> (1) [he] belongs to a protected group; (2) [he] was subjected to
> unwelcome harassment; (3) the harassment complained of was
> based on race; (4) the harassment complained of affected a term,
> condition, or privilege of employment; [and] (5) the employer
> knew or should have known of the harassment in question and
> failed to take prompt remedial action.

*Ramsey*, 286 F.3d at 268 (citations omitted).[17]  "Harassment is based on race if 'the

complained-of conduct had a racial character or purpose.'"  *King v. Enter. Leasing Co. of

DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Harris-

Childs v. Medco Health Solutions, Inc*., 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005)

(Means, J.)).  Collier must demonstrate a "connection between the allegedly harassing

incidents and [his] protected status."  *Id*. (citation omitted).  Regarding the fourth element,

> [h]arassment affects a term, condition, or privilege of
> employment if it is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive
> working environment.  Workplace conduct is not measured in
> isolation.  In order to deem a work environment sufficiently

---

[17]The fifth element need not be established if the harassment is allegedly committed
by the victim's supervisor.  *Wooten*, 2007 WL 63609, at *19 (citing *Celestine v. Petroleos
de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001)).

> hostile, all of the circumstances must be taken into
> consideration. This includes the frequency of the discriminatory
> conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and whether it
> unreasonably interferes with an employee's work performance.
> To be actionable, the work environment must be both
> objectively and subjectively offensive, one that a reasonable
> person would find hostile or abusive, and one that the victim in
> fact did perceive to be so.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted). "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Morgan*, 536 U.S. at 116).

> The real social impact of workplace behavior often depends on
> a constellation of surrounding circumstances, expectations, and
> relationships which are not fully captured by a simple recitation
> of the words used or the physical acts performed. Common
> sense, and an appropriate sensitivity to social context, will
> enable courts and juries to distinguish between simple teasing .
> . . and conduct which a reasonable person in the plaintiff's
> position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). Merely offensive conduct is not actionable. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[T]he Supreme Court has warned that these high standards are intentionally demanding to ensure that Title VII does not become a general civility code, and when properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic

use of abusive language." *Howard v. United Parcel Serv., Inc.*, 447 Fed. Appx. 626, 632 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

B

In support of his hostile work environment claim, Collier contends that he saw the word "ni——r" written inside of an elevator; that there were multiple depictions of swastikas left up at Parkland's facility for eighteen months; and that a nurse called him "boy" on two different occasions.  Parkland moves for summary judgment on Collier's hostile work environment claim, arguing, *inter alia*, that the nurse's calling him "boy" on two occasions in 2015 was nothing more than an isolated comment that cannot create a hostile work environment as a matter of law under Title VII or the TCHRA, and that the two instances of racial graffiti Collier saw over a two-year period were not sufficiently severe or pervasive to constitute a hostile work environment.

Collier responds that use of the term "boy" is "racially insulting and abusing as a matter of law," P. Br. 11; that after seeing the word "ni——r" carved into an elevator, Collier immediately complained about it to the Human Resources Department and Stetzel, yet nothing was done for months; that after Collier reported seeing swastikas drawn on the walls in an area where Collier and his colleagues were "frequently in and out of," *id.* at 13,[18] the

---

[18]Collier contends that the swastikas were in an area where he was assigned to work at least once or twice a week and that he would need to go into that room four or five times throughout the day.

swastikas remained up for over 18 months; and that "Defendant's failure to do anything to

remove them or investigate who was responsible for putting them up where Defendant's

employe[es] would have to see them daily establishes Plaintiff's prima facie case of a racially

hostile work environment," *id.* at 15.

## C

The court concludes that a reasonable jury could not find that the alleged conduct was

sufficiently hostile or abusive to create a racially hostile work environment.  In response to

Parkland's summary judgment motion, Collier relies on the following evidence: (1) a nurse

called him "boy" twice, and that this is a racially insulting term; (2) he saw the word

"ni——r" carved into an elevator, and, despite his complaints to the Human Resources

Department, it was not removed for months; and (3) he saw swastikas drawn on the walls of

an unfinished room that Collier used frequently, and, despite reporting this observation to

Stetzel, the swastikas remained on the wall for 18 months before they were painted over.

To determine whether a jury could find a racially hostile work environment, the court

considers "all the circumstances." *Faragher*, 524 U.S. at 787.  As noted above, "[w]orkplace

conduct is not measured in isolation.  In order to deem a work environment sufficiently

hostile, all of the circumstances must be taken into consideration." *Hernandez*, 670 F.3d at

651 (citations and internal quotation marks omitted).  A reasonable jury could not find that

these incidents, individually or in combination with each other, which occurred over the

course of what appears to be a two-year period, were sufficiently pervasive or severe to

establish a hostile work environment based on Collier's African American race, i.e., that the

conduct was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *Ramsey*, 286 F.3d at 268.

Collier maintains that it is "undisputed" that he was called "boy" by a colleague on "at least two separate occasions." P. Br. 11. But the evidence Collier cites in support of this proposition indicates that he could only recall one specific instance in which another Parkland employee referred to him as "boy." *See* P. App. 75. Being called "boy" on one occasion by a fellow employee is insufficiently pervasive to create a racially hostile work environment.

Nor does the graffiti Collier witnessed rise to the level required to create a hostile work environment. It is undisputed that the term "ni——r" is racially offensive and universally condemned. *See Vess v. MTD Consumer Grp., Inc.*, 2019 WL 168552, at *4 (5th Cir. Jan. 10, 2019) ("No word in the English language is as odious or loaded with as terrible a history." (quoting *Daso v. Grafton Sch., Inc.*, 181 F.Supp.2d 485, 493 (D. Md. 2002))); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) ("[ni——r is] the most noxious racial epithet in the contemporary American lexicon" (quoting *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998))); *E.E.O.C. v. Rock-Tenn Servs. Co.*, 901 F.Supp.2d 810, 825 (N.D. Tex. 2012) ("the word '[ni——r]' is pure anathema to African-Americans"). And the court will assume for purposes of deciding Parkland's summary judgment motion that graffiti depicting swastikas could be interpreted as offensive to Collier based on his African American race. Nonetheless, Collier has not produced any evidence that any of the graffiti at Parkland was directed toward him. *See, e.g.,*

*Hudson v. Cleco Corp.*, 539 Fed. Appx. 615, 620 (5th Cir. 2013) (per curiam) (affirming summary judgment on hostile work environment claim where, *inter alia*, Title VII plaintiff did not present sufficient evidence that hangman's noose was directed at him). And even if he was exposed to it while at work (even if not directed at him specifically), for the severity and pervasiveness of a term, condition, or privilege to indicate a hostile work environment, the work environment must be "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers." *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1982) (citation omitted). In his deposition, Collier testified that he "wasn't happy with" the graffiti, but when asked whether it interfered with his ability to perform work in any way, he explained "if it's something that I have to think of even a percentage, then I say maybe yeah. Because it's like it—it do—I'm not 100 percent. I'm 99 percent because of it. So if I have to say that, then maybe yeah." D. App. 24. Given Collier's acknowledgment that his work performance was affected by only a marginal one percent, and that he has failed to produce any evidence suggesting the impact of the graffiti on his emotional and psychological stability was any greater, a reasonable jury could not find that witnessing the graffiti at Parkland was sufficiently severe and pervasive to alter the terms and conditions of employment and create an abusive working environment.

When determining whether a plaintiff has been subjected to a hostile work environment, the court focuses on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct was physically threatening or humiliating, and the degree to which the conduct unreasonably interfered with an employee's work

performance.  *See, e.g., Ramsey*, 286 F.3d at 268.

> The question for the jury is not whether the racial conduct at issue was appropriate in the workplace or deserves condemnation.  The issue is whether, under the totality of the circumstances, the conduct was severe and pervasive enough to alter the terms and conditions of employment and create an abusive working environment.

*Jones v. Dallas Cty.*, 47 F.Supp.3d 469, 491 (N.D. Tex. 2014) (Fitzwater, C.J.).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  *Harris*, 510 U.S. at 21.

Considering together all of the summary judgment evidence on which Collier relies, the court holds that a reasonable jury could not find that Collier was subjected to a racially hostile work environment.  The court therefore grants summary judgment dismissing Collier's racially hostile work environment claim.

*   *   *

For the reasons explained, the court grants Parkland's motion for summary judgment and dismisses this action with prejudice by judgment filed today.[19]

**SO ORDERED**.

June 6, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[19]Collier's unopposed motion to amend trial setting order is denied without prejudice as moot.